IN THE UNITED STATES FEDERAL DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION
CIVIL DIVISION

ROGER N. SMITH, et al., }
}
    Plaintiffs, }
}
vs. }    Civil Action
}    Case No:  2.07-CV-194-MEF
}
ALABAMA DEPARTMENT OF }
HUMAN RESOURCES,  PAGE B. }
WALLEY, TARILTON BENTON, }
BENJAMIN JONES, ALICIA }
SEXTON, CAROLYN BRYSON, }
ANGELA SAMPSON, JENNIFER }
STORY, CHILD PROTECT, INC., }
AGNES MCKEEN, JANA CONLEE, }
SALLY WILLIAMSON, AND }
FICTITIOUS DEFENDANTS A, B, C, }
D, E, AND F, }
}
    Defendants. }

## NOTICE OF REMOVAL

TO THE JUDGES of the United States District Court for the Middle District of Alabama:

The Petition of the Alabama Department of Human Resources respectfully shows:

1.    On February 1, 2007, an action was commenced against the Petitioner in the Circuit Court of Montgomery, AL, entitled Roger N. Smith versus Alabama Department of Human Resources, et al., as set forth above, Civil Action Number CV-07-900058, by service upon the Petitioner of a Summons and Complaint, copies of which are attached hereto. No further proceedings have been had thereon.

2.    The above described action is a civil action of which this court has original jurisdiction under the provisions of Title 28, United States Code §1331, and is

one which may be removed to this court by the Petitioner, Defendant therein, pursuant to the provisions of Title 28, United State Code, §1441, in that the Complaint sets forth facts and claims that present substantial questions of federal law, to wit: a right of privacy by a parent to raise his or her child protected by the U. S. Constitution; the exercise freedom of religion also protected by the U. S. Constitution; and the right of due process also protected by the U.S. Constitution.

3.     The time has not elapsed with which the Defendants are entitled to file notice of removal to this Court.

4.     Defendants Alabama Department of Human Resources, Page B. Walley, Commissioner of the Alabama Department of Human Resources, Tarilton Benton, Benjamin Jones, Carolyn Bryson, Alicia Sexton, Angela Sampson, and Jenny Story are represented by the undersigned counsel, and join in the removal of this action.

5.     Defendants Child Protect Inc., Jana Conlee, Agnes McKean, and Sally Williamson are represented by Walter Scott, Esq., who has advised undersigned counsel that his clients concur with this Petition, and join in the removal of this action.

6.     Defendants will give written notice of the filing of this Notice of removal as required by 28 U.S.C. §1446(d), to the Plaintiffs through service upon their counsel.

7.     Defendants will file a copy of this Notice of Removal with the Clerk of the Circuit Court of Montgomery County, Alabama, as required by 28 U.S.C. §1446(d). Wherefore, the Petitioner prays that the above action now pending against the Alabama Department of Human Resources in the Circuit Court of Montgomery County, Alabama be removed therefrom to this Court.

RESPECTFULLY SUBMITTED this *5th* day of March 2007.

TROY KING (KIN 047)
ATTORNEY GENERAL

SHARON E. FICQUETTE (FIC 01)
Chief Legal Counsel
Ala. Dept. of Human Resources


MICHAEL C. JOINER (JOI 003)
Assistant Attorney General
Ala. Dept. of Human Resources
50 Ripley Street
P. O. Box 304000
Montgomery, AL 36130-4000
Ph: (334) 242-9330
Fax: (334) 242-0689

ATTORNEY FOR PETITIONER

ALABAMA DEPARTMENT OF
HUMAN RESOURCES

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing **NOTICE OF REMOVAL** upon all attorneys and/or parties of record in this case, by placing copies of the same addressed to them at their last know address in the United State Mail, first class postage pre-paid, on this the _5th_ day of March 2007.

Judy H. Barganier, Esq.
7025 Halcyon Park Drive
Montgomery, AL  36117

James B. Brannan, Esq.
P. O. Box 307
Montgomery, AL  36101-0307

Timothy C. Halstrom, Esq.
4162 Carmichael Court
Montgomery, AL  36106

Walter Scott, Esq.
Scott, Sullivan, Streetman & Fox
2450 Valleydale Road
Birmingham, AL  35244

MICHAEL C. JOINER
Asst. Attorney General

# EXHIBIT
# A

| State of Alabama<br>Unified Judicial System<br><br>Form C-34   Rev 6/88 | SUMMONS<br>- CIVIL - | Case Number:<br>03-CV-2007-900058.00 |
|---|---|---|

## IN THE CIVIL COURT OF MONTGOMERY, ALABAMA
### ROGER N. SMITH v. DEPARTMENT OF HUMAN RESOURCES

RECEIVED FEB - 1 2007

**NOTICE TO**  TARLITON BENTON, 3030 MOBILE HIGHWAY, MONTGOMERY AL, 36108

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY TIMOTHY HALSTROM

WHOSE ADDRESS IS 4170 LOMAC STREET, MONTGOMERY AL, 36106

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

TO ANY SHERIFF OR ANY PERSONNEL AUTHORIZED by the Alabama Rules of the Civil Procedure:

☑ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant

☐ Service by certified mail of this summons is initiated upon the written request of _____
pursuant to the Alabama Rules of the Civil Procedure

1/31/07
~~1/23/2007 9:19:18 PM~~
**Date**

/s MELISSA RITTENOUR
Clerk/Register

_ma_
**By**

☐ Certified mail is hereby requested  _____
Plaintiff's/Attorney's Signature

**RETURN ON SERVICE:**

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

_____ in _____ County, Alabama on _____

**Date**                    **Server's Signature**

EXHIBIT
**A**

**COVER SHEET
CIRCUIT COURT - CIVIL CASE**
(Not For Domestic Relations Cases)

Form ARCiv-93  Rev.5/99

Case Number:
**03-CV-2007-900058.00**

Date of Filing:
01/23/2007

Judge Code:

---

## GENERAL INFORMATION

IN THE CIRCUIT OF MONTGOMERY COUNTY, ALABAMA
ROGER N. SMITH ET AL v. DEPARTMENT OF HUMAN RESOURCES ET AL

First Plaintiff:  ☐ Business  ☑ Individual
                  ☐ Government  ☐ Other

First Defendant:  ☐ Business  ☐ Individual
                  ☑ Government  ☐ Other

### NATURE OF SUIT:

**TORTS: PERSONAL INJURY**

☐ WDEA - Wrongful Death
☐ TONG - Negligence: General
☐ TOMV - Negligence: Motor Vehicle
☐ TOWA - Wantonnes
☐ TOPL - Product Liability/AEMLD
☐ TOMM - Malpractice-Medical
☐ TOLM - Malpractice-Legal
☐ TOOM - Malpractice-Other
☐ TBFM - Fraud/Bad Faith/Misrepresentation
☐ TOXX - Other: _____

**TORTS: PERSONAL INJURY**

☐ TOPE - Personal Property
☐ TORE - Real Property

**OTHER CIVIL FILINGS**

☐ ABAN - Abandoned Automobile
☐ ACCT - Account & Nonmortgage
☐ APAA - Administrative Agency Appeal
☐ ADPA - Administrative Procedure Act
☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS  (cont'd)**

☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/Enforcement of Agency Subpoena/Petition to Preserve
☐ CVRT - Civil Rights
☐ COND - Condemnation/Eminent Domain/Right-of-Way
☐ CTMP-Contempt of Court
☐ CONT-Contract/Ejectment/Writ of Seizure
☐ TOCN - Conversion
☐ EQND- Equity Non-Damages Actions/Declaratory Judgment/Injunction Election Contest/Quiet Title/Sale For Division
☐ CVUD-Eviction Appeal/Unlawfyul Detainer
☐ FORJ-Foreign Judgment
☐ FORF-Fruits of Crime Forfeiture
☐ MSHC-Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
☐ PFAB-Protection From Abuse
☐ FELA-Railroad/Seaman (FELA)
☐ RPRO-Real Property
☐ WTEG-Will/Trust/Estate/Guardianship/Conservatorship
☐ COMP-Workers' Compensation
☑ CVXX-Miscellaneous Circuit Civil Case

**ORIGIN:**  F ☑ INITIAL FILING    A ☐ APPEAL FROM DISTRICT COURT    O ☐ OTHER

        R ☐ REMANDED    T ☐ TRANSFERRED FROM OTHER CIRCUIT COURT    _____

**HAS JURY TRIAL BEEN DEMANDED?**    ☑ Yes  ☐ No

**RELIEF REQUESTED:**    ☑ MONETARY AWARD REQUESTED    ☐ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:**    HAL021

1/23/2007 9:18:36 PM

/s TIMOTHY HALSTROM

**MEDIATION REQUESTED:**    ☐ Yes  ☑ No  ☐ Undecided


ELECTRONICALLY FILED
1/23/2007 9:19 PM
CIRCUIT COURT OF
MONTGOMERY COUNTY, ALABAMA
MELISSA RITTENOUR, CLERK

IN THE CIRCUIT COURT OF MONTGOMERY COUNTY,
MONTGOMERY, ALABAMA

ROGER N. SMITH AND                          *
SHERRY SMITH                                *
                                            *
        Plaintiffs,                         *
                                            *
VS.                                         *
                                            *
                                            *        CASE NO.: CV -2007- 900058
DEPARTMENT OF HUMAN                         *
RESOURCES of the STATE of                   *
ALABAMA,                                    *
PAGE B. WALLEY Commissioner,                *
Alabama Dept. of Human Resources            *
in his official capacity,                   *
TARILTON BENTON, Director of                *
Montgomery County DHR in his                *
individual capacity,                        *
CHILD PROTECT, INC., a corporation          *
BENJAMIN JONES, in his individual capacity, *
ALICIA SEXTON, in her individual capacity,  *
CAROLYN BRYSON, in her individual capacity, *
ANGELA SAMPSON, in her individual capacity, *
JENNIFER STORY, in her individual capacity, *
SALLY WILLIAMSON, in her individual capacity, *
AGNES MCKEEN, in her individual capacity,   *
JANA CONLEE, in her individual capacity,    *
and Fictitious Defendants                   *        PLAINTIFF DEMANDS
A, B, C, D, E and F.,                        *        TRIAL BY STRUCK JURY.
Defendants.                                 *
                                            *

## COMPLAINT

### I.  PARTIES

1.    The Plaintiff, Roger Smith, is over the age of nineteen years and is a resident of Montgomery County, Alabama and  is the father of Whitney Smith and Aurora Smith, minors.

2.    Plaintiff, Sherry Smith, is over the age of nineteen years and is a resident of

1

Montgomery County, Alabama and is the mother of Whitney Smith and Aurora Smith, minors.

3.    The Defendant, the Department of Human Resources, located in Montgomery County, Alabama, is the agency of the State of Alabama responsible for licensing, monitoring and overseeing individuals charged with the responsibility of protecting children as set forth in Part III "Applicable Statutes and Regulations," infra, and is being sued for injunctive relief.

4.    The Defendant, Page B. Walley, is sued-in his official capacity as the Commissioner of the Alabama Department of Human Resources and in that capacity is responsible for implementing and enforcing the policies and responsibilities of the Department of Human Resources. He is over the age of nineteen (19) years and is sued in his official capacity for injunctive relief.

5.    Defendant Child Protect, Inc., is a corporation registered in the State of Alabama with principle place of business located at 935 South Perry Street, Montgomery, Alabama, 36104 and is incorporated for the purpose of supporting children who are victims of abuse through the investigation and management of their cases in a non-threatening environment and at all times pertinent to the allegations in this Complaint was the employer of Defendants Jana Conlee and Agnes McKeen.

6.    Defendant Tarilton Benton, is an individual employed by the Montgomery County Department of Human Resources and is a supervisor within that agency assigned to oversee and advise other employees of the Montgomery County Department of Human Resources in the implementation of matters related to statutes, rules and regulations pertaining to DHR. He is over the age of nineteen years and is a resident of Montgomery County, Alabama and is being sued in his individual capacity.

2

7.    The Defendant, Alicia Sexton, is over the age of nineteen years and is a resident of Montgomery County, Alabama who was, at all times pertinent to this complaint, an employee of the Montgomery County Department of Human Resources responsible for investigating, assessing and preparing reports and assessments of alleged abuse, developing and implementing social service plans for children determined to be at risk of abuse all in accordance with established ruled and regulations promulgated by DHR and is being sued in her individual capacity.

8.    The Defendant, Carolyn Bryson, is over the age of nineteen years and is a resident of Elmore County, Alabama who was, at all times pertinent to this complaint, an employee of the Montgomery County Department of Human Resources responsible for  investigating, assessing and preparing reports and assessments of alleged abuse, developing and implementing social service plans for children determined to be at risk of abuse all in accordance with established ruled and regulations promulgated by DHR and is being sued in her individual capacity.

9.    The Defendant, Angela Sampson, is over the age of nineteen years and is a resident of Montgomery County, Alabama who was, at all times pertinent to this complaint, an employee of the Montgomery County Department of Human Resources responsible for investigating, assessing and preparing reports and assessments of alleged abuse, developing and implementing social service plans for children determined to be at risk of abuse all in accordance with established ruled and regulations promulgated by DHR and is being sued in her individual capacity.

10.    Defendant, Sally Williamson, is a resident of Lee County, Alabama, over the age of nineteen years, who at all times pertinent to this complaint, was a professional counselor

3

engaged by Defendant DHR to provide counseling and treatment services to Plaintiffs' children and who is being sued in her individual capacity.

11.    Defendant Jennifer Story, is a resident of Montgomery County, Alabama, over the age of nineteen years, who was, at all times pertinent to this complaint, an employee of the Montgomery County Department of Human Resources responsible for overseeing and supervising the investigation, assessment, and preparation and content of reports and assessments of alleged abuse, developing and implementing social service plans for children determined to be at risk of abuse and is being sued in her individual capacity.

12.    Defendant Ben Jones, is a resident of Montgomery County, Alabama, over the age of nineteen years, who was, at all times pertinent to this complaint, an employee of the Montgomery County Department of Human Resources responsible for overseeing and supervising the investigation, assessment, and preparation and content of reports and assessments of alleged abuse, developing and implementing social service plans for children determined to be at risk of abuse and is being sued in his individual capacity.

13.    Defendant Jana Conlee is a resident of Montgomery County, Alabama, over the age of nineteen years, who was, at all times pertinent to this complaint, an employee of Child Protect, Inc. responsible for conducting forensic interviews of Plaintiffs' children and is being sued in her individual capacity.

14.    Defendant Agnes McKeen is a resident of Montgomery County, Alabama, over the age of nineteen years, who was, at all times pertinent to this complaint, an employee of Child Protect, Inc., who was responsible for conducting forensic interviews of Plaintiffs' children and is being sued in her individual capacity.

4

15.    Fictitious Defendant A, B, and C are persons who negligently, willfully, illegally or outside his/her/their authority or under a mistaken interpretation of law failed to follow law and/or policies and procedures of the Department of Human Resources and failed to adequately train and/or supervise Defendants Alicia Sexton, Carolyn Bryson, and Angela Sampson and failed to properly report deficiencies, irregularities and other acts of misfeasance and malfeasance and failed to take proper corrective and/or adverse action upon discovering deficiencies, irregularities and other acts of misfeasance and malfeasance by Defendants Alicia Sexton, Carolyn Bryson, and Angela Sampson.

16.    Fictitious Defendant D is that person who negligently, willfully, illegally or outside his/her authority or under a mistaken interpretation of law failed to follow law and/or policies and procedures of the Department of Human Resources and failed to supervise Defendants Alicia Sexton, Carolyn Bryson, and Angela Sampson, and failed to review their investigation into the removal of Plaintiffs' children from their home.

## II.    JURISDICTION AND VENUE

17.    Jurisdiction over this matter is proper in the Circuit Courts of the State of Alabama in that the matters alleged herein involve conduct perpetrated upon Plaintiffs by Defendants actionable under the laws of the State of Alabama, to wit: negligence, breach of professional responsibility, intentional and malicious conduct, breach of professional responsibility, intentional and malicious creation of false memories, slander, liable, defamation of character and conspiracy to create false memories. Plaintiffs seek the courts ancillary jurisdiction for Defendants violation of Plaintiffs' Right to privacy in the raising of their children

5

under the Constitution of the United States of America and the Constitution of the State of Alabama.

18.    Venue is appropriate in the Fifteenth Judicial Circuit based upon residency of Defendants Department of Human Resources, Tarilton Benton, Alicia Sexton, Carolyn Bryson, Angela Sampson, Jennifer Story, Ben Jones, all being in Montgomery County, Alabama. Venue is further appropriate in that most if not all of the acts alleged in this complaint occurred in Montgomery County, Alabama.

## III.  APPLICABLE STATUTES AND REGULATIONS

19.    Alabama law mandates the reporting of suspected child abuse or neglect. *Code of Alabama (1975) §26-14-3* in pertinent part provides:

> "(a) All . . . school teachers and officials . . . when [a] child is known or suspected to be a victim of child abuse or neglect, shall be required to report, or cause a report to be made of the same, orally, either by telephone or direct communication immediately, followed by a written report, to a duly constituted authority.
> "(b) When an initial report is made to a law enforcement official, the official subsequently shall inform the Department of Human Resources of the report so that the department can carry out its responsibility to provide protective services when deemed appropriate to the respective child or children.
> . . . .
> "(e) Any provision of this section to the contrary notwithstanding, if any agency or authority investigates any report pursuant to this section and the report does not result in a conviction, the agency or authority shall expunge any record of the information or report and any data developed from the record."

20.    Defendant Department of Human Resources is charged with the obligation to investigate reports of child abuse and/or neglect. *Code of Alabama (1975), § 26-14-7* provides:

> "(a) The State or County Department of Human Resources shall make a thorough investigation promptly upon either the oral or written report. The primary purpose of

such an investigation shall be the protection of the child.
"(b) The investigation, to the extent that is reasonably possible, shall include:
    "(1) The nature, extent and cause of the child abuse or neglect;
    "(2) The identity of the person responsible therefor;
    "(3) The names and conditions of other children in the home;
    "(4) An evaluation of the parents or person responsible for the care of the
        child;
    "(5) The home environment and the relationship of the child or children
        to the parents or other persons responsible for their care; and
    "(6) All other data deemed pertinent.
"(c) The investigation may include a visit to the child's home, an interview with the subject child, and may include a physical, psychological or psychiatric examination of any child or children in that home. If the admission to the home, school or any other place that the child may be, or permission of the parent or other persons responsible for the child or children, for the physical, psychological or psychiatric examination, cannot be obtained, then a court of competent jurisdiction, upon cause shown, shall order the parents or persons responsible and in charge of any place where the child may be to allow the interview, examinations and investigation. If, before the examination is complete, the opinion of the investigators is that immediate removal is necessary to protect a child or children from further abuse or neglect, a court of competent jurisdiction, on petition by the investigators and with good cause being shown, shall issue an order for temporary removal and custody.
"(d) The county department of human resources shall make a complete written report of the investigation, together with its recommendations. Such reports may be made available to the appropriate court, the district attorney and the appropriate law enforcement agency upon request. The county department of human resources shall make a written report or case summary, together with services offered and accepted to the state's central registry on forms supplied by the registry for that purpose."

21.    In addressing this obligation, Defendant DHR promulgated the "Alabama

Department of Human Resources Social Services Division Administrative Code." Chapter 660-

5-34 of that code sets forth its rules and regulations for the administration of "Protective Services

for Children." The following are extracts from that Code relevant to this action:

A.    "660-5-34-.02  <u>Protective Services As Specialized Social Services</u>
(1)    When complaints or reports are received, the County Department has the
    duty and responsibility to assess the complaint or report, and:
    (a) evaluate the extent to which children are being harmed or are at risk of serious
    harm;
    (b) evaluate the parents' capacity to improve the situation;

(c) provide the supportive services needed to better the family's situation for children; and,

(d) when parents are unable to use this help, invoke legal authority of the court by petition and secure adequate protection, care, and treatment for children whenever necessary to meet their needs and rights."

. . . .

B.    "660-5-34-.04    Intake In Protective Services
. . . .

(4)    Once a report of suspected child abuse/neglect has been received, it must be investigated, and the investigation is .known by DHR as the child abuse/neglect initial assessment.

(5)    The following criteria must be considered at intake when determining which reports will be investigated first:
   (a)    The allegations in the report;
   (b)    The seriousness of the incident(s); and
   ( c)    The child's vulnerability (i.e., capacity for self-protection) and the potential risk of serious harm to the child."

. . . .

(7)    All reports of child abuse/neglect must be cleared through Alabama's Central Registry on .Child Abuse/Neglect (Refer to Rule 660-5-34-.07.) to determine if there have been previous reports involving the children, their family members, and all persons allegedly responsible for abuse/neglect."

C. "660-5-34-.05    Investigative/Initial Assessment Process.

(1)    The following standards for conducting initial assessments on a child abuse/neglect reports must be followed. Any deviations from these standards must have supervisory consultation and approval.

. . . .

(b) Assessing Reports with Parents.  Contact must be initiated with a custodial parent promptly upon receipt of a report except in instances where such action could pose danger for the child involved. The contact should establish the need for protective services or agency non-intervention. A home visit is required and may be made with or without prior notification.

( c) Interview with/observation of Child Victim and all other Children in the Home.
   1. All children who are subjects of child abuse/ neglect reports must be seen and privately interviewed if they are capable of a verbal response. Non-verbal children must be

8

observed while awake. The child m y be
interviewed/observed at some site other than the home,
(e.g. school, daycare). If the worker is refused access to a
child for interview or observation purposes, a court order
may be sought to obtain access to the child.
2. Photographs may be taken to document physical injuries
or conditions of children or neglectful conditions of the
child's home. Video and audiotapes may be used to record,
interviews. Parental consent for photographs, video and
audio taping is not necessary. If a parent refuses to permit
photographs or taping and the worker believes that
photographs or taping is necessary, law enforcement should
be contacted or court action should be explored.
3. If psychological evaluations, physical examinations, or
psychiatric evaluations of the children are considered
necessary during the assessment process, they may be
obtained with or without parental consent. If parental
consent cannot be obtained, a court order should be sought.
4. All other children who are regular members of the
household must be interviewed privately and in person."
(e) Interview with the Person Allegedly Responsible For Abuse/ Neglect.
The worker is to interview the person allegedly responsible individually
and in person unless the person is being criminally investigated, and law
enforcement, the District Attorney's office or the defense attorney refuses
to allow the interview. A copy of the person's statement to law
enforcement is then sufficient to document this part of the initial
assessment.
(f) The worker must interview all other adult household members
individually and in person.
(g) The worker must contact all other persons known to have first-hand
knowledge of the abuse/neglect allegations. These persons may be
interviewed either in person or by telephone."


D.  "660-5-34-.06   Disposition For Reports Of Child Abuse/Neglect.
Following the completion of an initial assessment of a report of child
abuse/neglect, the worker must arrive at a disposition as to whether the
child has experienced abuse/neglect and whether the person identified as
responsible for the abuse/neglect was actually responsible for the
abuse/neglect. The disposition for the allegations involving a child and the
disposition for the person allegedly responsible for the abuse/ neglect may
not be the same. The following dispositions are used by the Department of

9

Human Resources:

(1) Indicated - This disposition is used when a preponder-ance of the credible evidence (e.g./ eyewitness account/ medical report/ profes-sional evaluation) and the professional judgment of the worker (based on facts gathered during the course of the initial assessment) indicate that abuse/neglect has occurred. Credible evidence means that the available facts/ when viewed in light of surrounding circumstances/ would cause a reasonable person to believe that a child was abused or neglected. A determination of "indicated" is not based solely on whether a court has determined that abuse/neglect has occurred. However/ if a court finds cause that abuse/neglect has occurred, this evidence will automatically justify the disposition of "indicated." In addition, it is not necessary that the person allegedly responsible for the abuse/neglect be identified in order to have a disposition of "'indicated." A disposition of "indicated" is also used in regard to the person allegedly responsible for the, abuse/neglect when credible evidence and the professional judgment of the worker indicates that the person was responsible for the abuse/neglect.

(2) Unable to Complete - This disposition is used only when an initial assessment cannot be completed due to the worker being unable to secure the information needed to reach a disposition (e.g./ family moves and their present whereabouts are unknown; a family that is reported can never be located ' due to lack of identifying information). This disposition may also, be used for the person allegedly responsible for the abuse/neglect.

(3) Not Indicated - This disposition is used when a preponderance of the credible evidence and professional judgment does not substantiate that abuse/neglect has occurred. It is also used when credible evidence and professional judgment does not substantiate that the person allegedly responsible for the abuse/neglect was responsible for the abuse/neglect."

. . . .

E. "660-5-34-.09 Decision About Providing Services.

(1) At the conclusion of the initial assessment, a decision regarding a family's need for ongoing protective services shall be made. This decision may be to discontinue DHR services as no protective services are needed, to provide ongoing casework services, to initiate court action, or to make a referral to another agency for services. The decision is to be made with the parents or primary care givers participation to the extent feasible. In any event, the parents or primary care givers are entitled to an explanation of the action taken and the reasons for the action.

(2) The County Department must make reasonable efforts and offer all appropriate services to prevent removal of the child from the home

unless that child is in immediate danger of harm or threatened harm.
(3 )    Voluntary Placement of Children in Foster Care.
(a) The decision about placing children in foster care on a voluntary basis is a joint one between the worker and the supervisor. Voluntary placements are to be made only when there is not a safety threat and the Department would have no hesitancy in returning the children to their parents.

(b) After the County Department has placed a child in foster care on a voluntary basis, the child's or family's circumstances may change to the extent that a petition for legal custody of the child should be filed. A petition for temporary custody should be filed when there 'is:

    1. A lack of interest on the part of the parent(s) in working on goals established in the individualized service plan (i.e., case plan);

    2. The death of the parent who placed the child;

    3. The mental breakdown of the parent who placed the child; or

4. The whereabouts of the parent placing the child is unknown.

    ( c) Protective services should be terminated when children are receiving care that meets at least their minimum needs, and the parents have demonstrated their ability to continue to safely care for the children without the Department's services.


## IV.   FACTUAL ASSERTIONS


22.    On January 24, 2005, Whitney Smith, Plaintiffs' then sixteen (16) year old daughter, while a student at Lee High School, told a school counselor, Ms. Gibbs (FNU) that her (Whitney's) father, Plaintiff Roger Smith, had sexually abused her.

23.    In compliance with the statutory requirements, Ms. Gibbs contacted CPL Daniels of the Montgomery Police Department (MPD). In further compliance with the law, Defendant Carolyn Bryson, an employee of Defendant DHR, was contacted by MPD and informed of the allegations after which Defendant Bryson arranged to have Whitney Smith and Aurora Smith (Plaintiffs' then 10 year old daughter) taken to Defendant Child Protect, Inc. for further

11

evaluation.

24.     Montgomery Police Detective Angel Jones, transported Whitney to Defendant

Child Protect, Inc.'s office located at 935 South Perry Street, Montgomery, Alabama, 36104,

where she was interviewed by Defendant Agnes McKeen. During the course of this interview,

Whitney alleged Plaintiff Roger Smith had taken a shower with her when she was four years old

(12 years earlier) and afterwards rolled on the bed with her. On another occasion she alleged he

had touched her inappropriately when she was eleven years old (5 years earlier). She stated to

Defendant McKeen that there were no other incidents after she was eleven years old.

25.     CPL Daniels went to the Smiths' home and asked for Aurora Smith. Plaintiff

Sherry Smith picked Aurora Smith up from school and took her to Child Protect followed by

CPL Daniels in his patrol car. Aurora Smith was interviewed by Defendant Jana Conlee. During

this initial interview, Defendant Conlee opined that Aurora should think about the possibility that

Whitney was telling the truth about her Dad. Aurora emphatically denied any abuse and

repeatedly told the interviewer that Whitney is "a liar."

26.     After the January 24, 2005, interview at Defendant Child Protect, Inc., Aurora

begged to go home with her parents, but she was not allowed to and she was later told by

Defendant Bryson that "she (Aurora) never would go home and that she better get used to it."

27.     Upon information and belief, Defendant Bryson reviewed the Central Registry in

accordance with DHR regulations and discovered a file involving Plaintiffs' son D'Arcy Smith

containing the investigation into his molestation of Plaintiffs' older daughter Amber Smith.

D'Arcy was subsequently convicted. However, the file specifically found Plaintiff Roger Smith

to be "not indicated" by several sources during the course of the investigation and in the final

assessment.

28.    Notwithstanding the previous assessment's finding that Plaintiff Roger Smith was not indicated in that case, Defendant Bryson prepared a "boarding house" agreement to be signed by Plaintiff Sherry Smith whereby both children would be placed in foster care. Defendant Bryson presented the "boarding house agreement" to Plaintiff Sherry Smith for signing even after viewing the interviews with Whitney and Aurora which clearly indicated that there was no potential risk of serious harm to the children. In fact, Whitney stated that there were no alleged incidences since she was eleven years old, more than five years earlier. Furthermore, Aurora Smith emphatically declared feeling safe with her father and mother and demanded to go home with them.

29.    Defendant Bryson coerced Plaintiff Sherry Smith into signing the boarding house agreement by stating to her that if she didn't sign the agreement DHR would obtain a court order and the children would never be returned to her care and custody. Plaintiff Roger Smith did not sign the agreement and was not advised by DHR that a boarding house agreement had been signed by Plaintiff Sherry Smith until the first ISP meeting on January 31, 2005.

30.    Defendant Bryson participated in the forensic interviews of both Whitney and Aurora Smith by providing Defendant Child Protect, Inc., with her version of the family history obtained from the pervious CANS file, which version was absolutely and knowingly incorrect as it pertained to Plaintiff.

31.    Defendants Bryson, Conlee, and McKeen relied on Whitney's vague and unsubstantiated recollection of events which allegedly transpired over nine years earlier as support for their removal of Whitney and Aurora from Plaintiffs' care and custody.

13

32.     In fact, DHR assumed custody of the children by an emergency pick up order based on unsubstantiated and inconclusive information as verified by Defendant Bryson.

33.     Defendant Bryson placed Whitney and Aurora in foster care with Mr. and Mrs. Brookins, in Prattville, Alabama.

34.     On January 25, 2005, Plaintiffs Roger and Sherry Smith meet with Defendant Tarilton Benton and Defendant Bryson at DHR Offices and advised Defendants Benton and Bryson of all of the problems they had  had with Whitney over the prior two years, including many facts that supported Whitney's motives to fabricate allegations against Plaintiff Roger Smith.

35.     Plaintiffs asked Defendant Tarilton to place the children with a family of their own faith (The Church of Jesus Christ of Latter-day Saints, hereinafter LDS) thereby facilitating the children's continued attendance at the church of Plaintiffs' choice. Plaintiffs were advised that there were no LDS foster families and refused other placement suitable to Plaintiffs' right to raise their children.

36.     On January 26, 2005,  Bryson transported Whitney and Aurora to their respective schools and notified the schools of the change in custodial status of the children thereby restricting both parents (Plaintiffs) from direct contact with their children.

37.     On January 27, 2005, Defendant Bryson transported Whitney and Aurora to Auburn, Alabama, for counseling sessions with Defendant Sally Williamson. Defendant Bryson provided information to Defendant Williamson and relied on Defendant Williamson's knowledge of the Smiths "family history." Defendant Williamson began therapy with Whitney and Aurora, which therapy failed to follow standard procedure for providing therapy to alleged

14

victims of sexual abuse.

38.    Williamson had been the counselor involved with the Smith family in the prior incident with D'Arcy. Her bias in her treatment in the present case was substantiated by her subsequent statement to another of the Plaintiffs' children, Travis Smith, to the effect that she would like to see his parents (Plaintiffs) both go to jail where they belong.

39.    Defendant Williamson began the process of creating a false belief in Aurora that she had been abused and was in need of protection from her parents, to wit:

a.    Subsequently on February 14, 2005, Aurora questioned Defendant Williamson why she (Aurora) could not live with her parents and her older sister, Chantelle, could. Williamson responded by telling Aurora that she needed to be protected.

b.    Aurora asked Defendant Williams that she not be required to be supervised by DHR when she was visited by her mother. Defendant Williamson advised Aurora that such supervision was necessary for her protection from her mother.

c.    Aurora told Defendant Williamson, "Whitney lies but medical records don't." It is clear that Defendant Williamson had discussed her opinion of the medical records (see paragraphs 45 & 46, infra) involving Whitney with Aurora and had encouraged her to believe her father had actually engaged in the alleged abusive activities.

d.    Defendant Williamson viewed Aurora's confusion as to whom to believe as a "barrier to overcome" in accomplishing her goal of continuing Aurora in foster care.

e.    Defendant also expressed a concern that Plaintiff Sherry Smith was sabotaging Williamson's efforts in treating Aurora.

40.    To further her objective of establishing a false belief in Aurora, Defendant

15

Williamson arranged for and encouraged Aurora to speak with her older sister Amber concerning the prior case. Defendant Williamson also encouraged Aurora to talk to Whitney about Whitney's present allegations all of which is inconsistent with and in contravention to interviewing and treatment procedures established by the American Professional Society on the Abuse of Children (APSAC).

41.     On January 31, 2005, DHR held an Individualized Service Plan (ISP) meeting on both children. Bryson included in her record of the ISP meeting that Roger Smith "admitted to being indicated for previous abuse on his daughter Amber Smith," despite the fact that Defendant DHR's own records showed Plaintiff Roger Smith to have been "not indicated." Defendant Bryson, Defendant Jennifer Story (Bryson's supervisor) and other DHR agents and employees intentionally ignored DHR's records regarding the previous allegations of abuse of Amber Smith which clearly found Plaintiff Roger Smith's involvement to have been "not indicated."

42.     Defendants Bryson, Story, Ben Jones, Alicia Sexton, Angela Sampson, and possibly others intentionally ignored the findings from their review the DHR CANS files created when Amber Smith was the victim of sexual abuse perpetrated by her older brother, D'Arcy, which files contained statements that exonerated Plaintiff Roger Smith of Whitney's present allegations. For example, that file contains an interview with Whitney wherein Whitney denies being mistreated by her father when she was four years old. As a result DHR workers knowingly and intentionally perpetrated the lie that Plaintiff Roger Smith had been marked "Indicated" on previous allegations against an older daughter, Amber Smith.

43.     Also, during this ISP meeting, it was acknowledged that both Whitney and Aurora had expressed a strong desire to attend their own church. Notwithstanding a clear expression of a

16

desire on the part of the children to attend their own church; Defendants Benton, Bryson, Story,

Jones, Sexton, Sampson, Williamson conspired amongst themselves and with others to deprive

Plaintiffs of their right to raise their children according to the dictates of their own conscience, to

wit:

    a.  Defendants allowed the views of the foster parents (Mr. & Mrs. Brookins) to

supercede the need for the children to attend their church meetings and related activities as both

the children and Plaintiffs desired;

    b.  Defendants refused to consider Plaintiffs' pleas that their children be

permitted to live with friends who were members of their church during the interim of the

investigation;.

    c.  Defendants subsequently allowed the children to be placed in the home of

Devin and Amy Smith who were knowingly openly and defiantly opposed to the teachings of the

childrens' faith. Such defiance included: not allowing the children to attend the LDS church, not

allowing the children to attend other  LDS activities, not allowing the children to pray within the

house, refusing to forward correspondence from LDS church members to the children and telling

the children's LDS friends not to correspond with the children, and allowing Plaintiff Sherry

Smith's own personal letters to the children to be edited with any reference to the Church

removed.

    d.  Defendants accepted and placed in Plaintiffs' case file demeaning, derogatory,

and information designed to misrepresent the teachings and practices of The Church of Jesus

Christ of Latter-day Saints and actually admitted there was religious bias in the department

(DHR);

17

e.  Defendants opined to Aurora that there were some members of her Church who did not accept behavior as alleged against her father as being acceptable (suggesting that most do find it acceptable);

f.  Plaintiffs provided Defendants with information concerning the standards of behavior for youth in accordance with principles taught by The Church of Jesus Christ of Latter-day Saints, however, Defendants intentionally ignored Plaintiffs' requests that these standards be adhered to by allowing contradictory standards to be applied.

g.  Defendants systematically indoctrinated the children to the extent where Plaintiffs' right to raise their children according to their own faith was essentially abrogated;

h.  Defendants allowed Plaintiffs' daughter Aurora to be baptized into another faith without any consultation with Plaintiffs.

44.    During the ISP meeting, Plaintiff Roger Smith raised the possibility of his moving from the family residence in order that the children be allowed to stay in their own home with their mother, Plaintiff Sherry Smith. Contrary to permissible DHR policy, Plaintiffs were informed that such a plan was not an option. Upon information and belief, Defendants were conspiring to bring charges or allegations of misconduct against Plaintiff Sherry Smith.

45.    On February 1, 2005, Defendant Bryson transported Whitney and Aurora Smith to Montgomery Primary Care, where they were examined by Penny White, M.D. Dr. White found no physical evidence of abuse from her examination of Aurora, however, she determined that Aurora was sexually abused based on a false and malicious history provided by Defendant Bryson and others.

46.    Dr. White found physical evidence of some sexual activity in her examination of

18

Whitney, however, there was no explanation of how or by whom Whitney incurred the injury. Dr. White's finding of probable abuse was based on a false and malicious history provided by Defendant Bryson and others.

47.     On February 8, 2005, Defendant Bryson advised Sherry Smith that the medical exams proved Whitney had been abused. Defendants Bryson and Williamson told Aurora that Whitney's medical report "proves that Whitney is telling the truth." At that point Aurora began to succumb to the almost relentless pressure to eventually say in an interview on June 11, 2005 that she too had been sexually abused.

48.     Subsequently, Devin Smith (Whitney and Aurora's brother) petitioned the Juvenile Court for temporary custody of Whitney and Aurora. In her report to the Court dated April 26, 2005, Defendant Sexton intentionally and maliciously made a false representation to the Court that "Mr. Roger Smith was marked Indicated for sexual molestation of his daughter, Amber Smith" in the previous case mentioned, supra. Upon information and belief this report was prepared by Defendant Bryson.

49.     Defendant Sexton as well as the other Defendants employed by the DHR recommended Whitney and Aurora be placed with Devin and his wife notwithstanding the fact that the children would be sharing a room and that another older brother, Logan Smith, would be a resident in the home. All of this where there was a known history of brothers abusing sisters though not directly implicating Logan or Devin. Furthermore, Defendants Sexton, Bryson and other Defendants were aware that Devin Smith had been convicted of a youthful offender offense involving domestic violence against his wife (then girl-friend), eighteen months earlier and had spent nine months in boot camp. Defendants were also aware that Devin had a separate Youthful

19

Offender conviction involving grand theft of speakers from a business.

50.    Defendant Sexton with the approval of other Defendants also intentionally and maliciously misrepresented to the Court that Plaintiff Roger Smith "admitted to touching his daughter sexually but stated that he mistook her for being her mother." Plaintiff has never admitted to any such conduct. That information was obtained from Amber Smith which information Defendants knew directly contradicted her statements made during the investigation of the prior case.

51.    Prior to submitting her report to the Court, Defendants Bryson, Sexton and other Defendants were provided with significant information from which a reasonable person similarly situated would have, at a minimum, questioned whether or not Whitney was truthful in her allegations. This information included a history of Plaintiffs' disciplinary problems with Whitney and the report of a polygraph examination which showed Plaintiff Roger Smith did not abuse his children. Defendants intentionally and maliciously failed to bring this information to the Court's attention. Furthermore, Defendants refused to contact other members of the Smith family in order to corroborate the information they had received.

52.    Defendant Bryson, with the approval and consent of other Defendants employed by DHR intentionally and maliciously failed to follow regulations promulgated by the DHR as set forth supra by refusing to include reports from third parties about Whitney's motives and general propensity to lie as part of their investigation which report was provided to the Montgomery police Department, to the Juvenile Court, and ultimately to the Montgomery County District Attorneys office for prosecution.

53.    Defendants employed by the DHR intentionally and maliciously limited the

20

children's contact with Plaintiffs and with others who supported Plaintiffs (including family and church members) and refused to allow others who supported Plaintiffs to discuss the facts of the case with the children; while at the same time said Defendants conspired among themselves and with others to create false memories resulting in the false allegations made against Plaintiff Roger Smith. In fact, Defendant Jones instructed Defendant Sexton on several points which must be set forth in an ISP report with the avowed purpose of "not losing control of [the] case."

54.     Throughout the investigation, Defendants maintained Child Abuse and Neglect ("CAN") records and narratives created by the DHR workers and their supervisors contemporaneously with their involvement with the Smith children and the case itself. Defendant Jennifer Story admittedly edited the DHR records a year later for ostensibly "grammatical errors."

55.     After being removed from her home and for the next six weeks thereafter, Aurora maintained that Plaintiff Roger Smith had not done anything to her and that he would not have done anything to her or to Whitney. During a second interview at Defendant Child Protect, Inc. on March 11, 2005, Defendants Conlee and Bryson, after they and other Defendants including Williamson, Benton, Jones, Story, and Sexton, had subjected her to false interpretations of medical reports and improper discussions with Whitney and Amber, subjected Aurora to repeated questioning with the object of getting Aurora to make false allegations that she had been molested by her father.[1]  The interview tactics and procedures used during this and other interviews with Whitney and Aurora are contrary to the established procedures set forth by the

---

[1]  At one point during the interview, Defendant Conlee asks Aurora how she knows the allegations about Whitney are true, she responds, "because you told me."

21

APSAC.

56.    On June 11, 2005, Defendants Conlee and Sexton together with Amber Smith physically forced Aurora into the interview room at Defendant Child Protect, Inc and coerced her into making false claims that Plaintiff Roger Smith had molested her in an effort to maliciously slander and defame Plaintiffs.

57.    Throughout Defendant DHR's investigation of the allegations of abuse, Defendants communicated inaccurate, biased, prejudicial, and slanderous information about Plaintiffs to their children. Defendants acted beyond their authority as they, individually and collectively, failed to discharge duties pursuant to the regulations promulgated by DHR as set forth in Alabama Department of Human Resources Social Services Division Administrative Code, Chapter 660-5-34.

58.    Defendants performed their duties beyond their authority and in violation of Plaintiffs rights under the Constitution of the United States and the Constitution of the State of Alabama wherein they deprived Plaintiffs of their parental right to raise their children in their desired faith according to the dictates of their own conscience.

59.    Defendants acted beyond their authority as they, individually and collectively, failed to discharge duties pursuant to the regulations promulgated by DHR as set forth in Alabama Department of Human Resources Social Services Division Administrative Code, Chapter 660-5-34 when they removed the children from their homes and for the placement of children in foster care without the requisite findings.

60.    Defendants refused to provide Plaintiffs with any details about the allegations that resulted in the removal of their children from their home contrary to DHR policy and procedure.

61.    Throughout the investigation, Defendants obstructed the rights of Plaintiffs to discovery. They withheld the taped interviews from Carolyn Spencer, Aurora's second counselor, and they provided the courts and others in the case with false information that Roger Smith had sexually abused Amber Smith, an older sister to Whitney and Aurora Smith.

62.    Defendants acted beyond their authority as they, individually and collectively, failed to discharge duties pursuant to the regulations promulgated by DHR as set forth in Alabama Department of Human Resources Social Services Division Administrative Code, Chapter 660-5-34 when they submitted their records and reports to the District Attorney for the Fifteenth Judicial Circuit of Alabama for prosecution charging Plaintiff Roger Smith with four felony counts of Sex Abuse in the First Degree.

63.    The criminal charges against Plaintiff Roger Smith were nolle prossed on motion of the District Attorney.

## COUNT ONE
## NEGLIGENCE

Plaintiffs re-allege all averments set forth in paragraphs 1-63 as through specially set forth herein.

64.    Defendants Benton, Jones, Sexton, Sampson, Bryson, and Story, individually and collectively, acted beyond their authority as they individually and collectively negligently failed to discharge their duties as set forth herein pursuant to the regulations promulgated by DHR as set forth in Alabama Department of Human Resources Social Services Division Administrative Code, Chapter 660-5-34 .

23

65.    As a direct result and consequence of said Defendants' negligence, Plaintiffs have been injured and damaged in that they have: a) had to enure and will in the future endure the loss of the natural affection of their children; b) incurred a past, present and future loss of the natural right to guide and nurture their children in accordance with their rights as parents; c) have had to endure the past, present and future deterioration of the mental, spiritual and emotional health of their daughter; d) have endured the interference with employee/management relations; e) have endured the interference with relationships with family, friends and associates; f) have incurred the loss of employment; g) have incurred lost wages (present and future); h) had to endure the effects of suspicion of friends, family and acquaintances;  i) have incurred and will in the future incur enormous financial obligations for legal fees and other legal expenses; j) have incurred and will in the future incur professional counseling fees and costs; k) have lost employment opportunities; l) have endured a loss of sleep; m) have lost of opportunities to work with the Boy Scouts of America; n) have endured persecution and prosecution; o) have incurred a criminal arrest record; p) have endured the loss of the parental care, custody and control of their children; q) have endured the interference with goals and direction of family life, r) have endured the loss of the joy and happiness normally attendant with raising and guiding children through their formative years; s) have endured the deterioration of health; t) have incurred other incidental expenses and other sundry damages.

Wherefore Plaintiffs demand compensation accordingly in any amount in excess of the monetary jurisdiction of this Court together with costs.

24

### COUNT TWO
### NEGLIGENCE

Plaintiffs re-allege all averments set forth in paragraphs 1-63 as through specially set forth herein.

66.    Defendants Child Protect, Inc., Williamson, McKeen and Conlee, individually and collectively, acted negligently in that each had a duty to Plaintiffs to investigate, interview and/or treat Plaintiffs' children in a manner consistent with the standards of counseling and treatment of allegedly abused children as established by the American Professional Society on the Abuse of Children (APSAC) or other such professional organizations. Each said Defendant breached said duty by failing to apply APSAC standards in their investigation, counseling and treatment of Plaintiffs' children as set forth herein. Defendant Child Protect, Inc. is liable for the actions of its employees under the doctrine of *respondeat superior.*

67.    As a direct result and consequence of said Defendants' negligence, Plaintiffs have been injured and damaged in that they have: a) had to enure and will in the future endure the loss of the natural affection of their children; b) incurred a past, present and future loss of the natural right to guide and nurture their children in accordance with their rights as parents; c) have had to endure the past, present and future deterioration of the mental, spiritual and emotional health of their daughter; d) have endured the interference with employee/management relations; e) have endured the interference with relationships with family, friends and associates; f) have incurred the loss of employment; g) have incurred lost wages (present and future); h) had to endure the effects of suspicion of friends, family and acquaintances; i) have incurred and will in the future incur enormous financial obligations for legal fees and other legal expenses; j) have incurred and

25

will in the future incur professional counseling fees and costs; k) have lost employment

opportunities; l) have endured a loss of sleep; m) have lost of opportunities to work with the Boy

Scouts of America; n) have endured persecution and prosecution; o) have incurred a criminal

arrest record; p) have endured the loss of the parental care, custody and control of their children;

q) have endured the interference with goals and direction of family life, r) have endured the loss

of the joy and happiness normally attendant with raising and guiding children through their

formative years; s) have endured the deterioration of health; t) have incurred other incidental

expenses and other sundry damages.

Wherefore Plaintiffs demand damages accordingly in any amount in excess of the

monetary jurisdiction of this Court together with costs.


## COUNT THREE
## INTENTIONAL AND MALICIOUS CONDUCT

Plaintiffs re-allege all averments set forth in paragraphs 1-63 as through specially set

forth herein.

68.    Defendants Benton, Jones, Sexton, Sampson, Bryson, Story, Williamson,

McKeen, Conlee and Child Protect, Inc., individually and collectively, acted beyond their

authority as they individually and collectively willfully, maliciously, fraudulently, in bad faith,

and/or under a mistaken interpretation of the law as set forth herein failed to discharge their

duties pursuant to the regulations promulgated by DHR as set forth in Alabama Department of

Human Resources Social Services Division Administrative Code, Chapter 660-5-34 or consistent

with conduct as established by the American Professional Society on the Abuse of Children

26

(APSAC). Defendant Child Protect, Inc. is liable for the actions of its employees under the doctrine of *respondeat superior.*

69.    As a direct result and consequence of said Defendants' negligence, Plaintiffs have been injured and damaged in that they have: a) had to enure and will in the future endure the loss of the natural affection of their children; b) incurred a past, present and future loss of the natural right to guide and nurture their children in accordance with their rights as parents; c) have had to endure the past, present and future deterioration of the mental, spiritual and emotional health of their daughter; d) have endured the interference with employee/management relations; e) have endured the interference with relationships with family, friends and associates; f) have incurred the loss of employment; g) have incurred lost wages (present and future); h) had to endure the effects of suspicion of friends, family and acquaintances; i) have incurred and will in the future incur enormous financial obligations for legal fees and other legal expenses; j) have incurred and will in the future incur professional counseling fees and costs; k) have lost employment opportunities; l) have endured a loss of sleep; m) have lost of opportunities to work with the Boy Scouts of America; n) have endured persecution and prosecution; o) have incurred a criminal arrest record; p) have endured the loss of the parental care, custody and control of their children; q) have endured the interference with goals and direction of family life, r) have endured the loss of the joy and happiness normally attendant with raising and guiding children through their formative years; s) have endured the deterioration of health; t) have incurred other incidental expenses and other sundry damages.

Wherefore Plaintiffs demand compensation accordingly in any amount in excess of the monetary jurisdiction of this Court. Plaintiffs demand punitive damages, attorneys fees and costs.

27

## COUNT FOUR
## BREACH OF PROFESSIONAL RESPONSIBILITY

Plaintiffs re-allege all averments set forth in paragraphs 1-63 as through specifically set forth herein.

70.     Defendants Williamson, McKeen, Conlee, and Child Protect, Inc., individually and collectively, have a duty to perform their services in a professional manner. Defendants acted negligently in that each had a duty to investigate, interview and or treat Plaintiffs' children in a manner consistent with the standards of counseling and treatment of allegedly abused children as established by the American Professional Society on the Abuse of Children (APSAC). Each said Defendant breached their professional responsibility by failing to apply APSAC standards in their investigation, counseling and treatment of Plaintiffs' children as heretofore set forth. Defendant Child Protect, Inc. is liable for the actions of its employees under the doctrine of *respondeat superior.*

71.     As a direct result and consequence of said Defendants' negligence, Plaintiffs have been injured and damaged in that they have: a) had to enure and will in the future endure the loss of the natural affection of their children; b) incurred a past, present and future loss of the natural right to guide and nurture their children in accordance with their rights as parents; c) have had to endure the past, present and future deterioration of the mental, spiritual and emotional health of their daughter; d) have endured the interference with employee/management relations; e) have endured the interference with relationships with family, friends and associates; f) have incurred the loss of employment; g) have incurred lost wages (present and future); h) had to endure the

28

effects of suspicion of friends, family and acquaintances; i) have incurred and will in the future

incur enormous financial obligations for legal fees and other legal expenses; j) have incurred and

will in the future incur professional counseling fees and costs; k) have lost employment

opportunities; l) have endured a loss of sleep; m) have lost of opportunities to work with the Boy

Scouts of America; n) have endured persecution and prosecution; o) have incurred a criminal

arrest record; p) have endured the loss of the parental care, custody and control of their children;

q) have endured the interference with goals and direction of family life, r) have endured the loss

of the joy and happiness normally attendant with raising and guiding children through their

formative years; s) have endured the deterioration of health; t) have incurred other incidental

expenses and other sundry damages.

Wherefore Plaintiffs demand damages accordingly in any amount in excess of the

monetary jurisdiction of this Court together with costs.

## COUNT FIVE
## INTENTIONAL AND MALICIOUS CREATION OF FALSE MEMORIES

Plaintiffs re-allege all averments set forth in paragraphs 1-63 as through specially set

forth herein.

72.    Defendants Benton, Jones, Sexton, Sampson, Bryson, Story, Williamson,

McKeen, Conlee and Child Protect, Inc., individually and collectively, acted beyond their

authority as each willfully, maliciously, fraudulently, in bad faith, and/or under a mistaken

interpretation of the law as set forth herein failed to discharge their duties pursuant to the

regulations promulgated by DHR as set forth in Alabama Department of Human Resources

Social Services Division Administrative Code, Chapter 660-5-34 or as established by the

American Professional Society on the Abuse of Children (APSAC) by creating in Aurora Smith

false memories of abuse by her father, Plaintiff Roger Smith. Defendant Child Protect, Inc. is

liable for the actions of its employees under the doctrine of *respondeat superior*.

      73.    As a direct result and consequence of said Defendants' negligence, Plaintiffs have

been injured and damaged in that they have: a) had to enure and will in the future endure the loss

of the natural affection of their children; b) incurred a past, present and future loss of the natural

right to guide and nurture their children in accordance with their rights as parents; c) have had to

endure the past, present and future deterioration of the mental, spiritual and emotional health of

their daughter; d) have endured the interference with employee/management relations; e) have

endured the interference with relationships with family, friends and associates; f) have incurred

the loss of employment; g) have incurred lost wages (present and future); h) had to endure the

effects of suspicion of friends, family and acquaintances; i) have incurred and will in the future

incur enormous financial obligations for legal fees and other legal expenses; j) have incurred and

will in the future incur professional counseling fees and costs; k) have lost employment

opportunities; l) have endured a loss of sleep; m) have lost of opportunities to work with the Boy

Scouts of America; n) have endured persecution and prosecution; o) have incurred a criminal

arrest record; p) have endured the loss of the parental care, custody and control of their children;

q) have endured the interference with goals and direction of family life, r) have endured the loss

of the joy and happiness normally attendant with raising and guiding children through their

formative years; s) have endured the deterioration of health; t) have incurred other incidental

expenses and other sundry damages.

Wherefore Plaintiffs demand compensation accordingly in any amount in excess of the monetary jurisdiction of this Court. Plaintiffs demand punitive damages, attorneys fees and costs.

_____

## COUNT SIX
## CONSPIRACY TO CREATE FALSE MEMORIES

Plaintiffs re-allege all averments set forth in paragraphs 1-63 as through specially set forth herein.

74.    Beginning in and about January 24, 2005 and continuing to the present, Defendants Benton, Jones, Sexton, Sampson, Bryson, Story, Williamson, McKeen, Conlee and Child Protect, Inc. did willfully, maliciously, fraudulently, in bad faith, and/or under a mistaken interpretation of the law as set forth herein did knowingly and willfully combine, conspire, confederate and agree together to create in Aurora Smith false memories of abuse by her father, Plaintiff Roger Smith. Said Defendants acted beyond their authority by failing to act pursuant to the regulations promulgated by DHR as set forth in Alabama Department of Human Resources Social Services Division Administrative Code, Chapter 660-5-34 or as established by the American Professional Society on the Abuse of Children (APSAC) by creating in Aurora Smith. Defendant Child Protect, Inc. is liable for the actions of its employees under the doctrine of *respondeat superior*.

75.    As a direct result and consequence of said Defendants' negligence, Plaintiffs have been injured and damaged in that they have: a) had to enure and will in the future endure the loss of the natural affection of their children; b) incurred a past, present and future loss of the natural

31

right to guide and nurture their children in accordance with their rights as parents; c)  have had to endure the past, present and future deterioration of the mental, spiritual and emotional health of their daughter; d) have endured the interference with employee/management relations; e) have endured the interference with relationships with family, friends and associates; f) have incurred the loss of employment; g) have incurred lost wages (present and future); h)  had to endure the effects of suspicion of friends, family and acquaintances;  i) have incurred and will in the future incur enormous financial obligations for legal fees and other legal expenses; j) have incurred and will in the future incur professional counseling fees and costs; k) have lost employment opportunities; l) have endured a loss of sleep; m) have lost of opportunities to work with the Boy Scouts of America; n) have endured persecution and prosecution; o) have incurred a criminal arrest record; p) have endured the loss of the parental care, custody and control of their children; q) have endured the interference with goals and direction of family life, r) have endured the loss of the joy and happiness normally attendant with raising and guiding children through their formative years; s) have endured the deterioration of health; t) have incurred other incidental expenses and other sundry damages.

Wherefore Plaintiffs demand compensation accordingly in any amount in excess of the monetary jurisdiction of this Court. Plaintiffs demand punitive damages, attorneys fees and costs.

## COUNT SEVEN
## NEGLIGENCE

Plaintiffs re-allege all averments set forth in paragraphs 1-63 as through specially set forth herein.

32

76.     Defendant Child Protect, Inc had a duty to train and supervise its employees to investigate, interview and or treat Plaintiffs' children in a manner consistent with the standards of counseling and treatment of allegedly abused children as established by the American Professional Society on the Abuse of Children (APSAC).  Defendant breached said duty by failing to train and supervise its employees to investigate, interview and or treat Plaintiffs' children in a manner consistent with the standards of counseling and treatment of allegedly abused children as established by the American Professional Society on the Abuse of Children (APSAC).

77.     As a direct result and consequence of said Defendants' negligence, Plaintiffs have been injured and damaged in that they have: a) had to enure and will in the future endure the loss of the natural affection of their children; b) incurred a  past, present and future loss of the natural right to guide and nurture their children in accordance with their rights as parents; c)  have had to endure the past, present and future deterioration of the mental, spiritual and emotional health of their daughter; d) have endured the interference with employee/management relations; e) have endured the interference with relationships with family, friends and associates; f) have incurred the loss of employment; g) have incurred lost wages (present and future); h)  had to endure the effects of suspicion of friends, family and acquaintances;  i) have incurred and will in the future incur enormous financial obligations for legal fees and other legal expenses; j) have incurred and will in the future incur professional counseling fees and costs; k) have lost employment opportunities; l) have endured a loss of sleep; m) have lost of opportunities to work with the Boy Scouts of America; n) have endured persecution and prosecution; o) have incurred a criminal arrest record; p) have endured the loss of the parental care, custody and control of their children;

33

q) have endured the interference with goals and direction of family life, r) have endured the loss

of the joy and happiness normally attendant with raising and guiding children through their

formative years; s) have endured the deterioration of health; t) have incurred other incidental

expenses and other sundry damages.

Wherefore Plaintiffs demand compensation accordingly in any amount in excess of the

monetary jurisdiction of this Court together with costs.

---

## COUNT EIGHT
## SLANDER

Plaintiffs re-allege all averments set forth in paragraphs 1-63 as through specially set

forth herein.

78.    Defendants Benton, Jones, Sexton, Sampson, Bryson, Story, and Williamson,

individually, made malicious publication expressed orally which charged Plaintiff Roger Smith

with an offense punishable by indictment, to wit: Sexual Abuse in the first degree, which would

tend to bring Plaintiff into public hatred, contempt or ridicule or charges an act odious and

disgraceful in society which publication injured Plaintiffs. Defendants Benton, Jones, Sexton,

Sampson, Bryson, Story and Williamson acted beyond their authority as each willfully,

maliciously, fraudulently, in bad faith, and/or under a mistaken interpretation of the law as set

forth herein failed to discharge their duties pursuant to the regulations promulgated by DHR as

set forth in Alabama Department of Human Resources Social Services Division Administrative

Code, Chapter 660-5-34 or as established by the American Professional Society on the Abuse of

Children (APSAC) by slandering Plaintiff Roger Smith.

34

79.    As a direct result and consequence of said Defendants' negligence, Plaintiffs have been injured and damaged in that they have: a) had to enure and will in the future endure the loss of the natural affection of their children; b) incurred a  past, present and future loss of the natural right to guide and nurture their children in accordance with their rights as parents; c)  have had to endure the past, present and future deterioration of the mental, spiritual and emotional health of their daughter; d) have endured the interference with employee/management relations; e) have endured the interference with relationships with family, friends and associates; f) have incurred the loss of employment; g) have incurred lost wages (present and future); h)  had to endure the effects of suspicion of friends, family and acquaintances;  i) have incurred and will in the future incur enormous financial obligations for legal fees and other legal expenses; j) have incurred and will in the future incur professional counseling fees and costs; k) have lost employment opportunities; l) have endured a loss of sleep; m) have lost of opportunities to work with the Boy Scouts of America; n) have endured persecution and prosecution; o) have incurred a criminal arrest record; p) have endured the loss of the parental care, custody and control of their children; q) have endured the interference with goals and direction of family life, r) have endured the loss of the joy and happiness normally attendant with raising and guiding children through their formative years; s) have endured the deterioration of health; t) have incurred other incidental expenses and other sundry damages.

Wherefore Plaintiffs demand compensation accordingly in any amount in excess of the monetary jurisdiction of this Court. Plaintiffs demand punitive damages, attorneys fees and costs.

---

35

## COUNT NINE
### LIABLE

Plaintiffs re-allege all averments set forth in paragraphs 1-63 as through specially set forth herein.

80.    Defendants Benton, Jones, Sexton, Sampson, Bryson, Story, and Williamson, individually, made malicious publication Expressed in print which charged Plaintiff Roger Smith with an offense punishable by indictment, to wit: Sexual Abuse in the first degree, which would tend to bring Plaintiff into public hatred, contempt or ridicule or charges an act odious and disgraceful in society which publication injured Plaintiffs. Defendants Benton, Jones, Sexton, Sampson, Bryson, Story and Williamson acted beyond their authority as each willfully, maliciously, fraudulently, in bad faith, and/or under a mistaken interpretation of the law as set forth herein failed to discharge their duties pursuant to the regulations promulgated by DHR as set forth in Alabama Department of Human Resources Social Services Division Administrative Code, Chapter 660-5-34 or as established by the American Professional Society on the Abuse of Children (APSAC) by libeling Plaintiff Roger Smith.

81.    As a direct result and consequence of said Defendants' negligence, Plaintiffs have been injured and damaged in that they have: a) had to enure and will in the future endure the loss of the natural affection of their children; b) incurred a past, present and future loss of the natural right to guide and nurture their children in accordance with their rights as parents; c) have had to endure the past, present and future deterioration of the mental, spiritual and emotional health of their daughter; d) have endured the interference with employee/management relations; e) have

36

endured the interference with relationships with family, friends and associates; f) have incurred the loss of employment; g) have incurred lost wages (present and future); h) had to endure the effects of suspicion of friends, family and acquaintances; i) have incurred and will in the future incur enormous financial obligations for legal fees and other legal expenses; j) have incurred and will in the future incur professional counseling fees and costs; k) have lost employment opportunities; l) have endured a loss of sleep; m) have lost of opportunities to work with the Boy Scouts of America; n) have endured persecution and prosecution; o) have incurred a criminal arrest record; p) have endured the loss of the parental care, custody and control of their children; q) have endured the interference with goals and direction of family life, r) have endured the loss of the joy and happiness normally attendant with raising and guiding children through their formative years; s) have endured the deterioration of health; t) have incurred other incidental expenses and other sundry damages.

Wherefore Plaintiffs demand compensation accordingly in any amount in excess of the monetary jurisdiction of this Court. Plaintiffs demand punitive damages, attorneys fees and costs.

## COUNT TEN
## DEFAMATION OF CHARACTER

Plaintiffs re-allege all averments set forth in paragraphs 1-63 as through specifically set forth herein.

82.     Defendants Benton, Jones, Sexton, Sampson, Bryson, Story, and Williamson, individually, were negligent in publishing a false and defamatory statement to other persons

37

concerning the Plaintiffs which is actionable per se, to wit: that Plaintiff Roger Smith had

committed conducted punishable by a felony indictment for sexual abuse in the first degree.

Defendants Benton, Jones, Sexton, Sampson, Bryson, Story and Williamson acted beyond their

authority as each willfully, maliciously, fraudulently, in bad faith, and/or under a mistaken

interpretation of the law as set forth herein failed to discharge their duties pursuant to the

regulations promulgated by DHR as set forth in Alabama Department of Human Resources

Social Services Division Administrative Code, Chapter 660-5-34 or as established by the

American Professional Society on the Abuse of Children (APSAC) by libeling Plaintiff Roger

Smith.

83.    As a direct result and consequence of said Defendants' negligence, Plaintiffs have

been injured and damaged in that they have: a) had to enure and will in the future endure the loss

of the natural affection of their children; b) incurred a past, present and future loss of the natural

right to guide and nurture their children in accordance with their rights as parents; c) have had to

endure the past, present and future deterioration of the mental, spiritual and emotional health of

their daughter; d) have endured the interference with employee/management relations; e) have

endured the interference with relationships with family, friends and associates; f) have incurred

the loss of employment; g) have incurred lost wages (present and future); h) had to endure the

effects of suspicion of friends, family and acquaintances; i) have incurred and will in the future

incur enormous financial obligations for legal fees and other legal expenses; j) have incurred and

will in the future incur professional counseling fees and costs; k) have lost employment

opportunities; l) have endured a loss of sleep; m) have lost of opportunities to work with the Boy

Scouts of America; n) have endured persecution and prosecution; o) have incurred a criminal

38

arrest record; p) have endured the loss of the parental care, custody and control of their children;

q) have endured the interference with goals and direction of family life, r) have endured the loss

of the joy and happiness normally attendant with raising and guiding children through their

formative years; s) have endured the deterioration of health; t) have incurred other incidental

expenses and other sundry damages.

Wherefore Plaintiffs demand compensation accordingly in any amount in excess of the

monetary jurisdiction of this Court. Plaintiffs demand punitive damages, attorneys fees and costs.

## COUNT ELEVEN
## DEPRIVATION OF PLAINTIFFS' RIGHT TO PRIVACY IN THE RAISING OF THEIR CHILDREN UNDER THE CONSTITUTION OF THE UNITED STATES OF AMERICA AND THE CONSTITUTION OF THE STATE OF ALABAMA

Plaintiffs re-allege all averments set forth in paragraphs 1-63 as through specially set

forth herein.

84.    Defendants Benton, Jones, Sexton, Sampson, Bryson, and Story, individually and

collectively, acted beyond their authority as they individually and collectively failed to discharge

their duties pursuant to the regulations promulgated by DHR as set forth in Alabama Department

of Human Resources Social Services Division Administrative Code, Chapter 660-5-34 as alleged

herein and as a consequence deprived Plaintiffs of their right to privacy in the raising of their

children as guaranteed by the Constitution of the United States of America and the Constitution

of the State of Alabama.

85.    As a direct result and consequence of said Defendants' negligence, Plaintiffs have

been injured and damaged in that they have: a) had to enure and will in the future endure the loss of the natural affection of their children; b) incurred a  past, present and future loss of the natural right to guide and nurture their children in accordance with their rights as parents; c)  have had to endure the past, present and future deterioration of the mental, spiritual and emotional health of their daughter; d) have endured the interference with employee/management relations; e) have endured the interference with relationships with family, friends and associates; f) have incurred the loss of employment; g) have incurred lost wages (present and future); h)  had to endure the effects of suspicion of friends, family and acquaintances;  i) have incurred and will in the future incur enormous financial obligations for legal fees and other legal expenses; j) have incurred and will in the future incur professional counseling fees and costs; k) have lost employment opportunities; l) have endured a loss of sleep; m) have lost of opportunities to work with the Boy Scouts of America; n) have endured persecution and prosecution; o) have incurred a criminal arrest record; p) have endured the loss of the parental care, custody and control of their children; q) have endured the interference with goals and direction of family life, r) have endured the loss of the joy and happiness normally attendant with raising and guiding children through their formative years; s) have endured the deterioration of health; t) have incurred other incidental expenses and other sundry damages.

Wherefore Plaintiffs demand compensation accordingly in an amount in excess of the monetary jurisdiction of this Court together with costs.

40

## COUNT TWELVE
## INJUCNTIVE RELIEF

86.     The Plaintiffs seek Injunctive Relief to require the Defendant Department of

Human Resources and Defendant Page B. Walley to follow  in practice a policy that requires the

observance of the due process rights of parents accused (rightfully or falsely) of abusing their

children and to institute procedures whereby those who are charged with the responsibility of

investigating allegation of abuse do not summarily decide the issue and thereafter force the

evidence to support their conclusions.

87.     Furthermore, Defendants Alabama State Department of Human Resources and

Page B. Walley should be enjoined to require the supervision of employees to ensure that they

are not withholding documentary information from accused parents to which they are rightfully

entitled.

88.     Furthermore, Defendants Alabama State Department of Human Resources and

Page B. Walley should be enjoined from permitting the removal of children from the homes of

their parents without proper and substantial justification.

89.     Furthermore, Defendants Alabama State Department of Human Resources and

Page B. Walley should be enjoined from permitting its agents and employees from discriminating

against individuals under investigation because of their religious preference.

90.     The Plaintiffs seek such other equitable and injunctive relief as the court sees fit to

grant.

41

Respectfully submitted on this the 23rd day of January, 2007.

/s/Timothy C. Halstrom
Timothy C. Halstrom
Bar Number HAL021
Attorney for Petitioner

Of Counsel:
Timothy C. Halstrom
Attorney at Law
4170 Lomac Street
Montgomery, AL 36106
(334) 272-9524
email: halstromtim@aol.com

Of Counsel:
Law Offices of Judy H. Barganier, P.C.
7025 Halcyon Park Drive
Montgomery, AL 36117
(334) 271-7110
email: judy@barganier.com

Of Counsel
The Brannan Law Firm, PC
602 S. Hull Street
Montgomery, AL 36104
(334)353-3881
jbb@brannanlaw.com

**PLAINTIFFS DEMAND TRIAL BY STRUCK JURY.**

/s/Timothy C. Halstrom
Timothy C. Halstrom
Bar Number HAL021
Attorney for Petitioner

42